EMILIO M. GARZA, Circuit Judge:
These consolidated appeals challenge the district court’s refusal to enjoin the City of Houston’s annexation of a residential area known as Kingwood. Finding that we can no longer grant plaintiffs the relief they requested below, we vacate the district court’s prior orders and remand with instructions to dismiss the case as moot.
I
In January 1996, the City of Houston, Texas (the “City”) began discussing the possibility of annexing a relatively affluent, non-minority-dominated residential area north of the City, known as “Kingwood.” Throughout the year, the City mayor met with various representatives from Kingwood, and the City Council held various hearings on the subject. On December 11, 1996, the City Council enacted separate ordinances annexing King-wood and abolishing its thirteen utility districts — effective the following day.
On December 23, 1996, the City requested preclearance of the annexation from the Department of Justice (“DOJ”), pursuant to § 5 of the Voting Rights Act of 1965 (‘Voting Rights Act”), P.L. No. 89-110, 79 Stat. 439 (codified as amended at 42 U.S.C. § 1973 et seq.). The City held a special election on January 18, 1997, and a resulting runoff election on February 15 — both unrelated to the *188 issue of annexation.[1] Because the DOJ did not grant preclearance until February 24, Kingwood residents were not permitted to participate in these elections. See 42 U.S.C. § 1973 (holding that no change in voting takes effect until precleared). The parties agree that as of the date of this appeal, the annexation of Kingwood has been fully accomplished, and no further obstacles remain to Kingwood residents voting in City elections.
This suit, instituted in October 1996, before the City actually accomplished the annexation, was brought by many different plaintiffs alleging different injuries as well as separate causes of action. The one common denominator for the group was their unanimous request for relief — an injunction against the annexation and all efforts to implement it. Mary Almanderez and Thomas Phillips (“minority plaintiffs”), minority residents of the City, alleged that both the purpose and effect of the annexation were to dilute the votes of minority residents, in violation of the Voting Rights Act and the Fifteenth Amendment. Kingwood’s thirteen utility districts — namely Harris County Utility Districts Nos. 1, 2, 3, 4, 5, 8, and 10 and Harris County Municipal Utility Districts Nos. 93, 262, 350, and 356 (collectively, “Utility Districts” or “Districts”) — claimed that the December 11 ordinances exceeded the City’s statutoiy annexation authority as set out in various sections of the Texas Local Government Code. John D. Harris, a resident of Kingwood, alleged that permitting the annexation to go forward before the January election would deprive him of his right to vote in violation of the Fourteenth and Fifteenth Amendments.
In addition to requesting an injunction against the annexation and all implementing actions such as the seizure of property and the provision of certain basic services to Kingwood residents, Almanderez, Phillips, Harris and the Utility Districts (collectively “plaintiffs”) requested that the district court stay the annexation at least until the January election and preferably until some final decision could be reached on the state-law claims of the Utility Districts. In the alternative, the plaintiffs requested that if the annexation went forward, the special election scheduled for January 18th be enjoined until the City received preclearance and could permit King-wood residents to vote. The plaintiffs also requested declaratory relief to the effect that the City’s actions were unconstitutional and invalid under state law. At no time did any plaintiff request damages, nominal or compensatory, nor did any plaintiff request that the district court invalidate the special election or dismantle the annexation once accomplished.[2]
Following an evidentiary hearing, the district court denied plaintiffs’ request for preliminary injunctive relief and dismissed the claims of the Utility Districts for lack of standing. Harris and the Utility Districts (“appellants”) appealed from this order, but before we heard arguments in the case, the district court entered a final judgment denying all relief to the plaintiffs. The appellants subsequently filed a second notice of appeal, and on their unopposed motion we consolidated the first appeal from the district court’s denial of a preliminary injunction with the second appeal from the district court’s final judgment in favor of the City. The minority plaintiffs appealed neither from the denial of preliminary injunctive relief, nor from the district court’s final judgment. *189 Their claims regarding the allegedly discriminatory purpose and impact of the annexation, styled under the Voting Rights Act as well as the Fifteenth Amendment, are therefore not before us.[3]
II
“To qualify as a case fit for federal-court adjudication, ‘an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.’ ” Arizonans for Official English v. Arizona, 520 U.S. 43,-, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997). Whether an actual controversy remains at this stage of the litigation is a question that we resolve de novo.[4] See Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (noting that questions of law generally “must be resolved de novo on appeal”).
As an initial matter, we find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined. See, e.g., Garza v. Westergren, 908 F.2d 27, 29 (5th Cir.1990) (holding plaintiffs request for an injunction to stay a contempt proceeding moot “[bjecause the contempt proceeding has occurred”); Seafarers Int’l Union of N. Am. v. National Marine Servs., Inc., 820 F.2d 148, 151-52 (5th Cir.1987) (“[Ojnce the action that the plaintiff sought to have enjoined has occurred, the ease is mooted because ‘no order of this court could affect the parties’ rights with respect to the injunction we are called upon to review.’ ”) (quoting Honig v. Students of the Cal. Sch. for the Blind, 471 U.S. 148, 149, 105 S.Ct. 1820, 1821, 85 L.Ed.2d 114 (1985)); Marilyn T., Inc. v. Evans, 803 F.2d 1383, 1384 (5th Cir. 1986) (holding plaintiffs appeal from the denial of preliminary injunctive relief against the suspension of a license moot once the license was permanently revoked); Brown v. New Orleans Clerks and Checkers Union Local No. U97, 590 F.2d 161, 164 (5th Cir.1979) (holding defendants’ appeal from the grant of an injunction moot because “[tjhis court could fashion no order that would change the relationship of the parties”); see also Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir.1993) (holding that an appeal becomes moot once circumstances dictate that the court can no longer grant meaningful relief) (collecting cases). At that point, no order of the court can affect the rights of the parties with regard to the requested relief. See DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (noting that the “starting point” for an analysis of mootness is the “familiar proposition that ‘federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them’”) (quoting North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). Applying this general rule to the case at hand, the claims of the appellants for prospective relief against the annexation and the special election are indeed moot. Kingwood has been a part of the City for almost a year and a half; since the January 1997 election and subsequent February run-off, the entire City Council has gone through an election cycle, with no impediment to Kingwood’s participation. The Constitutional harms Hams sought to enjoin, if indeed there were any, have come and gone; we simply cannot enjoin that which has already taken place.
*190 Hams and the Districts nevertheless raise several arguments in an attempt to demonstrate the existence of an ongoing, live controversy. First, the appellants cite Vieux Carre Property Owners, Residents, & Assocs., Inc. v. Brown, 948 F.2d 1436, 1446 (5th Cir.1991), for the proposition that “a suit is moot only when it can be shown that a court cannot even ‘theoretically grant’ relief.” In an attempt to demonstrate how we might “theoretically” find a remedy for their claims, the appellants suggest that we order the annexation undone or, in the alternative, that we invalidate the results of the January 18th election and subsequent February run-off. These arguments illustrate not only a fatal misconstruction of Vieux Carre, but also an inadequate recognition of our role in resolving, rather than reviving, legal disputes.
In Vieux Carre, an historic preservation society (the “Society”) brought suit against the Army Corps of Engineers (the “Corps”) alleging that the Corps had authorized the construction of an aquarium and park on the Mississippi riverfront without the proper consultation procedures mandated by the National Historic Preservation Act (“NHPA”), 16 U.S.C. § 470 et seq. Vieux Carre, 948 F.2d at 1439-40. The Society “sought a judgment declaring that the Corps must comply with the historic review process, and also sought an injunction to keep certain non-federal parties from proceeding with the riverfront project.” Id. at 1440. Following an appeal and remand, the substance of which is irrelevant for our purposes, the district court dismissed the suit as moot, in light of the fact that the park and acquarium were “virtually complete.” Id. at 1441. We reversed the district court’s finding of mootness, noting that although it was possible that forcing the Corps to perform a review under the NHPA would result in no “meaningful relief,” it was also possible that review under NHPA standards might, even at this late date, result in the “implement[ation] [of] measures, great or small, in mitigation of some or all adverse effects, if any, wrought by the park.” Id. at 1446-47. Granting the relief of NHPA review was therefore “theoretical” not in the sense that we had imagined possibilities beyond those requested in the complaint, but rather in the sense that we had given the plaintiff the benefit of the doubt as to whether certain requested relief would in fact ease or correct the alleged wrong.
Viewed in this light, Vieux Carre contains no support for the appellant’s notion that we may fashion relief not requested below in order to keep a suit viable. To the extent that any broad language in Vieux Carre may be read as such, it is necessarily limited by our explicit holdings in other cases, see, e.g., Marilyn T., 803 F.2d at 1384-85 (rejecting plaintiffs suggestion that mootness may be avoided by granting a request for relief not first addressed by the district court), as well as by the Supreme Court’s recent, stinging rebuke of the Ninth Circuit in Arizonans for Official English.
The opening paragraphs of that opinion speak with unmistakeable clarity to the present case:
Federal courts lack competence to rule definitively on the meaning of state legislation, nor may they adjudicate challenges to state measures absent a showing of actual impact on the challenger. The Ninth Circuit, in the case at hand, lost sight of these limitations....
[The initiating plaintiff, Maria-Kelly F.] Yniguez commenced and maintained her suit as an individual, not as a class representative. A state employee at the time she filed her complaint, Yniguez voluntarily left the State’s employ in 1990 and did not allege she would seek to return to a public post. Her departure for a position in the private sector made her claim for prospective relief moot. Nevertheless, the Ninth Circuit held that a plea for nominal damages could be read into Yniguez’s complaint to save the case, and therefore pressed on to an ultimate decision....
The Ninth Circuit had no warrant to proceed as it did. The ease had lost the essential elements of a justiciable controversy and should not have been retained for adjudication on the merits by the Court of Appeals.
Arizonans for Official English, 117 S.Ct. at 1059. No meaningful distinction from Arizonans for Official English exists on the facts *191 before us. The plaintiffs in this case, just like Yniguez, sought only' prospective relief below.[5] On appeal, just like Yniguez, they suggest that we “read into” their complaint additional requests for relief and then proceed to an adjudication on the merits. As the Supreme Court noted, however, we have “no warrant” to proceed in such a fashion. The “case and controversy” requirement of Article III is no mere formality — a nuisance to be brushed away before setting down to the business of constitutional interpretation. The appellants began this suit by requesting certain, specific relief, and because we can no longer grant that relief, the case is moot.[6]
Ill
“When a civil case becomes moot pending appellate adjudication, ‘[t]he established practice ... in the federal system ... is to reverse or vacate the judgment below and remand with a direction to dismiss’.” Arizonans for Official English, 520 U.S. at -, 117 S.Ct. at 1071 (quoting United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950)). We see no reason to depart from that practice here. The district court’s order of January-22, 1997, denying preliminary injunctive relief to the plaintiffs and dismissing the claims of the Utility Districts for lack of standing, and its final judgment in favor of the City, issued November 20,1997, to the extent that such order and judgment address the claims of the appellants, are therefore VACATED and the case REMANDED with instructions to DISMISS AS MOOT.

. The special election was held to fill a vacant at-large City Council seat and to consider a proposed charter amendment and a proposed ordinance, both of which were placed on the ballot by a petition of City residents. The run-off election in February was for the City Council seat.

. The plaintiffs' second amended complaint does request that the district court "enjoin the annexation and all efforts to implement the annexation as void ab initio.” In other pleadings, the plaintiffs request that the district court find the annexation void or declare it void under state law. Yet the relief requested as a result of those proposed findings was always the same — enjoin or stay the annexation and its implementation until the election or at least until a determination of the merits of the state-law claims. Simply by phrasing their new appellate claims for relief in terms of “voiding” the annexation, as opposed to disan-nexing or undoing the annexation, does not eliminate the fact that the plaintiffs sought only an injunction or a stay below. Had they wished to bring any other claim for relief, they could have moved to amend their complaint.

. Any claims relating to § 5 of the Voting Rights Act are also not before us, given that a three-judge panel was convened pursuant to § 5 specifically to address those claims. See 42 U.S.C. § 1973c (authorizing the appointment of a three-judge court to adjudicate claims of § 5 violations). The three-judge panel held a hearing on December 17, 1996, and issued its order three days later, stating that no violations of § 5 had occurred. No party has appealed from this decision.

. Although the appellants allege in their reply brief that the City has raised the issue of mootness for the first time on appeal, they do not dispute that we must address the issue. See Joseph v. City of New Orleans, 110 F.3d 252, 253 (5th Cir.1997) (noting that we must examine the basis of our jurisdiction, even sua sponte when necessary). Cf. Marathon Oil Co. v. Ruhrgas, 145 F.3d 211, 217 (5th Cir.1998) (en banc) ("The requirement that jurisdiction be established as a threshold matter ‘spring[s] from the nature and limits of the judicial power of the United States' and is ’inflexible and without exception.'") (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).

. The fact that the appellants here requested declaratory relief in addition to an injunction cannot save their appeal from dismissal. Requests for declaratory relief may sustain a suit only when the claims "challenge ... some ongoing underlying policy” rather than "merely attacking] an isolated ... action.” City of Houston v. HUD, 24 F.3d 1421, 1429 (D.C.Cir.1994); see also Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 125-26, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974) (holding that for declaratory relief to save a suit from mootness, "[i]t is sufficient that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest") (emphasis added). The appellants make no claim on appeal that the City has a defective annexation "policy,” or even that the City has any policy with respect to annexations at all.

. Harris also argues that his constitutional claims fall within the "capable of repetition yet evading review” exception to the mootness doctrine because “[sjome possibility clearly exists that the City would implement future voting changes affecting Plaintiffs without obtaining the requisite preclearance, again denying Plaintiffs their rights to vote and run in elections” and also because "if the City is correct in its assertion that a voting rights issue becomes moot once the relevant election is held, then the type of harm to Plaintiffs clearly is of such limited duration that it is likely to be moot before litigation is completed.” This thinly veiled attempt to conflate Harris’ claims with those of the minority plaintiffs is unavailing; the minority plaintiffs have not appealed, and their claims are not before us. Moreover, the idea that elections may come and go with no opportunity for effective appellate review may seem compelling, but it is so only as to those potential plaintiffs that in fact have a constitutionally protected "right” to vote in a given election. Because voting rights are fundamentally statutory and not constitutional in origin, see Rodriguez v. Popular Democratic Party, 457 U.S. 1, 9, 102 S.Ct. 2194, 2199, 72 L.Ed.2d 628 (1982) ("[Tjhis Court has often noted that the Constitution does not confer the right of suffrage upon any one, and that the right to vote, per se, is not a constitutionally protected right”) (citations and internal quotation marks omitted), Harris cannot refute the plain language of 42 U.S.C. § 1973, providing that certain statutory boundary changes have “no legal effect” with regard to conferring the franchise until pre-cleared by the Attorney General. To the extent that Harris argues that his right to vote arises not from a boundary-changing statute but from the fact of governance, this argument is foreclosed by Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 69, 99 S.Ct. 383, 389, 58 L.Ed.2d 292 (1978) ("Appellants’ argument that extraterritorial extension of municipal powers requires concomitant extraterritorial extension of the franchise proves too much.”).
Alternatively, even if Harris did have a constitutionally protected right to vote in City elections as of January 1997, he could have preserved his suit by requesting even nominal damages as opposed to resting completely on the request for injunctive relief.