**SEVEN WORDS LLC, a California limited liability company, Plaintiff–Appellant,**

v.

**NETWORK SOLUTIONS, a Delaware corporation, Defendant–Appellee.**

**No. 99–56909.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2001

Filed Aug. 13, 2001

Jay M. Spillane, Fox & Spillane LLP, Los Angeles, California, for plaintiff-appellant Seven Words LLC.

Suzanne V. Wilson and James S. Blackburn, Arnold & Porter, Los Angeles, California, for defendant-appellee Network Solutions, Inc.

Stephen F. Rohde, Rohde & Victoroff, Los Angeles, CA, and Peter J. Eliasberg, ACLU Foundation of Southern California, Los Angeles, CA, for amicus curiae ACLU Foundation of Southern California.

Before: MAGILL,* MCKEOWN, and FISHER, Circuit Judges.

McKEOWN, Circuit Judge:

This case stems from the efforts of Seven Words LLC to register sixteen Internet domain names [1] based on the George Carlin "Seven Dirty Words" routine.[2] When Network Solutions, Inc. ("NSI") refused to register the names, Seven Words brought suit for declaratory and injunctive relief, claiming that NSI's refusal to register the names infringed its rights under the "liberty of speech" clause of the California Constitution, Article 1, § 2(a).

On NSI's motion under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed the case. At the time Seven Words appealed, twelve of the sixteen domain names had already been registered to third parties. After the parties filed their briefs on appeal, the remaining four domain names were registered to third parties. We conclude, therefore, that this case is now moot, and it must be dismissed.

## BACKGROUND

### A. NSI's Domain Name Registration Service

In the early 1990s, the National Science Foundation ("NSF"), an agency of the federal government, assumed responsibility for coordinating and funding management of the nonmilitary portion of the Internet infrastructure. *Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 504 (D.C.Cir. 1999), *cert. denied,* 528 U.S. 1115, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000); 63 Fed.Reg. 31741, 31742 (June 10, 1998). Through a competitive bid process, NSI was selected to provide nonmilitary domain name registration services and entered into a Cooperative Agreement with NSF. *Id.; see also Nat'l A–1 Adver., Inc. v. Network Solutions, Inc.*, 121 F.Supp.2d 156, 161–62 (D.N.H.2000). During the period when the events giving rise to this lawsuit took place, NSI had the exclusive authority to register second-level domain names to the public for four top-level Internet domains: ".com," ".net," ".edu," and ".org."[3] In prac-

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

1. The domain names include f* *k.com and five other "dirty words" in combination with three top-level domains, ".com," ".net," and ".org."

2. George Carlin, *Seven Words You Can Never Say on Television, on Class Clown* (Little

David Records 1972); *see also FCC v. Pacifica Found.*, 438 U.S. 726, 751–55, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978).

3. In http://www.ca9.uscourts.gov, for example, "gov" is the top-level domain name and "uscourts" is the second-level domain name. For an explanation of Internet domain names and a description of NSI's domain-name registration service, see *National A–1 Advertising, Inc. v. Network Solutions, Inc.*, 121 F.Supp.2d 156, 158–65 (D.N.H.2000); *see also Lockheed*

tical terms, this exclusivity meant that anyone seeking to register a name under one of those domains could only do so through NSI.

Through its registration service, NSI ensured that no two parties registered the same domain name. For the most part, NSI's registration process was completely electronic, requiring no human intervention by the company. The application was available on the Internet and was transmitted to NSI by electronic mail. NSI's system would then compare the requested domain name with all previously registered names. Generally, if the name had not already been assigned to another party, NSI would register it to the applicant for a fee.

In September 1998, NSF transferred responsibility for administering the Cooperative Agreement with NSI to the Department of Commerce. Two months later, in response to a presidential initiative to privatize, increase competition, and promote international participation in the domain name system, the Department of Commerce transferred control of Internet domain names from the government to a private, nonprofit corporation, Internet Corporation for Assigned Names and Numbers ("ICANN"). ICANN was then responsible for overseeing the transition from a sole-registrar to a multiple-registrar system. *See Nat'l A-1 Adver.*, 121 F.Supp.2d at 162–63; 63 Fed.Reg. 31741, 31744, 31749 (June 10, 1998); 63 Fed.Reg. 8826, 8826–27 (Feb. 20, 1998). NSI's exclusive arrangement ended in June 1999.

### B. *Seven Words I*

Seven Words initially sought to register ten second-level domain names that were based on Carlin's "Seven Dirty Words"

routine. NSI refused to register the names, however, because it had a policy prohibiting registration of domain names containing certain words that it deemed "inappropriate," including six of Carlin's "Seven Dirty Words." [4] As a consequence of this policy, in March 1999, Seven Words filed its first lawsuit against NSI in federal court in the Central District of California, *Seven Words LLC v. Network Solutions, Inc.*, No. 99–02816–SVW ("*Seven Words I*"), requesting an injunction ordering registration of the disputed domain names to Seven Words and a declaration that NSI's policy and the refusal to register the domain names violated Seven Words's rights under the federal and California Constitutions.

Seven Words thereafter sought registration of six additional domain names, which, like the first ten, were based on Carlin's "Seven Dirty Words" routine. Again, NSI refused registration. Seven Words therefore sought to amend the complaint in *Seven Words I* to include the six additional domain names, as well as a claim for damages, but the district court did not rule on the request. Rather, as explained below, then began Seven Words's hopscotch litigation odyssey from California to New Hampshire and back again. Although the dates of the various rulings are not per se critical to the story, they are provided to assist in keeping the chronology in mind and to give a flavor of how the litigation was intertwined.

In June 1999, NSI's status as the exclusive registrar expired, and other companies joined NSI in offering domain name registration services in the ".com," ".net," ".edu," and ".org" top-level domains. In anticipation of that change, Seven Words

---

*Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 981–82 (9th Cir.1999).

**4.** NSI permitted registration of one of the "dirty words"-s* *t-to permit registration of innocuous words, including Japanese words ending in "shita."

filed an application for a temporary restraining order ("TRO"), requesting that NSI be enjoined from allowing other domain name registrars to register the contested domain names during the pendency of *Seven Words I.* Although the district court granted the TRO, it was subsequently discharged and no preliminary injunction issued. NSI tendered control over the disputed domain names to the district court through a Deposit of Domain Name Declaration, under which the domain names could only be released for registration upon order of the *Seven Words I* court or dismissal of the action.

In this same time frame, the district court learned that there was a related case against NSI pending in federal court in New Hampshire, *National A–1 Advertising, Inc. v. Network Solutions, Inc.,* 121 F.Supp.2d 156 (D.N.H.2000) ("*Haberstroh*"). In that case, plaintiff Lynn Haberstroh, who had no connection to Seven Words, sought a declaration that NSI's refusal to register six domain names violated her constitutional rights. Four of those names were identical to those sought by Seven Words, and Haberstroh, like Seven Words, argued that NSI's policy of refusing to register the domain names violated the First Amendment.

Recognizing the overlap between the two lawsuits, in May 1999, the district court in California directed NSI to file a motion to transfer *Seven Words I* to the District of New Hampshire for consolidation with *Haberstroh.* The district court granted the motion in June 1999, ordered that the remaining federal claims be transferred to the *Haberstroh* court, and declined to exercise supplemental jurisdiction over Seven Words's state constitutional claim because it involved a "novel and complex issue of state law." *Seven Words I* was thereafter transferred to the New Hampshire court, along with the Deposit of Domain Name Declaration.

C. *Seven Words II* and Subsequent Litigation

Meanwhile, after the *Seven Words I* court first raised the issue of transfer and only a month before argument on the motion, in May 1999, Seven Words surreptitiously filed the instant action against NSI, *Seven Words II,* in California superior court.[5] Seven Words did not advise the district court in *Seven Words I* or NSI of this filing; the complaint was not served until after the district court granted the transfer motion in June 1999. The complaint asserted the same factual allegations as *Seven Words I,* but it included all sixteen domain names and did not include a federal claim. Rather, Seven Words alleged that NSI's failure to register the domain names violated the "liberty of speech" clause of the California Constitution. NSI removed the case to federal court based on diversity, and *Seven Words II* was assigned to the same judge as *Seven Words I.*

In July 1999, NSI filed a motion to dismiss *Seven Words II* under Rule 12(b)(6), arguing that Seven Words failed to state a claim under state law or, in the alternative, that the court should transfer the action to the district court in New Hampshire for consolidation with *Seven Words I* and *Haberstroh.* Seven Words opposed the motion and filed its own motion, seeking remand of *Seven Words II* to

5. Seven Words also named ICANN as a defendant, as it had in *Seven Words I.* In *Seven Words I,* the district court ordered dismissal of ICANN, concluding that it lacked jurisdiction over the claims against ICANN because Seven Words lacked standing to sue ICANN and any claim against ICANN was not ripe. In *Seven Words II,* the district court noted that ICANN was not served with the complaint and, in any event, that ICANN was not a proper defendant.

the California superior court on the ground that the district court should abstain from deciding the California constitutional question.

In October 1999, at the same time the district court transferred *Seven Words I* to New Hampshire, the court also granted NSI's motion to dismiss *Seven Words II*, denied Seven Words's motion to remand, and dismissed *Seven Words II* with prejudice for failure to state a claim against NSI under the California Constitution. This dismissal is the order from which Seven Words appeals.

After the appeal of *Seven Words II* to this court, Seven Words, for-in its own words-"tactical reasons," failed to comply with various orders issued by the New Hampshire court in the *Seven Words I* litigation, resulting in dismissal of *Seven Words I* in January 2000. By its terms, the Deposit of Domain Name Declaration, which granted the *Seven Words I* court control over the registrations of the domain names at issue, expired with the dismissal of that case. The New Hampshire court, however, maintained control of the four domain names that were at issue in *Haberstroh.*

Seven Words affirmatively chose to put all of its eggs in the *Seven Words II* basket. Back in July 1999, six of the requested domain names were registered to third parties by other domain name registrars. In February 2000, Seven Words sought a TRO from the *Seven Words II* district court, restraining NSI from allowing another domain name registrar to register the ten remaining domain names to third parties pending this appeal. The district court denied the application. Seven Words, however, never appealed the district court's ruling and did not make any further application for injunctive relief. As a result, by the time the parties filed their briefs on appeal, a total of twelve of the sixteen domain names for

which Seven Words sought registration had already been registered to third parties by other domain name registrars; the other four domain names remained in the control of the *Haberstroh* court.

After the parties' briefing on appeal in this case, in September 2000, the New Hampshire district court filed its opinion in *Haberstroh. See Nat'l A–1 Adver.,* 121 F.Supp.2d at 178–79 (holding that NSI did not violate Haberstroh's constitutional rights by refusing registration of the disputed domain names). Thereafter, the New Hampshire court and/or NSI released the four remaining domain names. Again, Seven Words took no action to prevent their release.

By February 2001, the domain names had been registered by other domain name registrars to third parties. Thus, more than two months before argument in this case, all sixteen disputed names had already been registered. Just days before oral argument, NSI informed this court of this development, moving to vacate the district court's judgment with instructions to dismiss the case as moot. We note, with respect to both parties, that "[i]t is the duty of counsel to bring to the federal tribunal's attention, '*without delay,*' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 23, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (emphasis in original). Although the parties addressed mootness in their briefing on appeal, they did so *before* the remaining domain names had been registered to third parties.

## DISCUSSION

Before we can consider the merits of Seven Words's appeal, we must first address the threshold issue of whether this case is moot. Under Article III, § 2 of the Constitution, we have jurisdiction to ad-

dress only actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English*, 520 U.S. at 67, 117 S.Ct. 1055 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (internal quotation marks and citation omitted)). As the Supreme Court observed more than a century ago,

> [W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.

*Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). In other words, "[w]here the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot," *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir.1978), and it must be dismissed. *See GATX/Airlog Co. v. United States Dist. Court*, 192 F.3d 1304, 1306 (9th Cir.1999).

■ NSI "has the heavy burden of establishing that there is no effective relief remaining for [us] to provide." *Id.* As NSI points out, Seven Words, in its complaint, sought only declaratory and injunctive relief. In practical terms, the injunctive relief that Seven Words sought is no longer available-NSI abandoned its policy prohibiting registration of domain names containing certain words, NSI is no longer the exclusive domain name registrar and, most importantly, the sixteen domain names that Seven Words sought to register have been registered to third parties.

■ The question before us is whether this case is nevertheless still a live contro-

versy because, as Seven Words argues, it may still be entitled to damages and/or declaratory relief. Seven Words never sought damages in this litigation (until a few days before argument in this court) and, indeed, effectively disavowed damages for tactical reasons. As for the declaratory relief, which is closely intertwined with the injunctive relief, there is no longer a live controversy. At this juncture, Seven Words effectively seeks an advisory opinion. We conclude that neither of these claims is sufficient to resurrect Seven Words's suit.

In an effort to overcome the mootness challenge, Seven Words rests its argument primarily on *Z Channel Ltd. Partnership v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir.1991), where we held that "[i]f [the plaintiff] is entitled to collect damages in the event that it succeeds on the merits, the case does not become moot even though declaratory and injunctive relief are no longer of any use." That statement may make perfect sense in the context of *Z Channel*, but it cannot be extended to the circumstances presented here.

Z Channel filed a multi-count complaint. Count One alleged that enforcement of various "no-advertising" agreements (*i.e.*, agreements with movie distributors prohibiting Z Channel from displaying paid advertisements) by Home Box Office ("HBO") constituted unreasonable restraints of trade in violation of the Sherman Act. Z Channel sought declaratory and injunctive relief on Count One. *Id.* at 1340. In Count Two, Z Channel alleged that the agreements were the result of a group boycott, also in violation of the Sherman Act. On that count, in addition to declaratory and injunctive relief, Z Channel sought damages. *Id.* Finally, Z Channel's complaint asserted that it

was entitled to damages based on state contract and tort claims. *Id.*

Following discovery, Z Channel abandoned Count Two, and HBO moved for summary judgment on Count One. The district court granted the motion and ordered all counts dismissed. *Id.* Z Channel stopped showing movies, however, after the filing of its appeal. *Id.* Because the only claim remaining in the case was Count One, for which Z Channel requested only declaratory and injunctive relief, HBO argued on appeal that the case was moot. *Id.* Z Channel countered that it was entitled to seek damages if it was successful on Count One. *Id.* at 1340–41.

The panel agreed with Z Channel and concluded that the case was not moot, stating:

A case or controversy still exists because the parties are disputing whether enforcement of and insistence on the no-advertising agreements constituted an unreasonable restraint of trade. If Z Channel prevails, it may recover damages for loss of advertising revenue. Federal Rule of Civil Procedure 54(c) allows the district court to award damages if Z Channel proves facts entitling it to relief even though Z Channel never requested damages.

It is clear that Z Channel did not foreclose relief in damages by failing to ask for them in its Count One prayer. "[E]very final judgement shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings.*" Fed.R.Civ.P. 54(c) (emphasis added).

HBO asserts, however, that it is far too late for Z Channel to talk of damages now. It points out that we dismissed a portion of an appeal for mootness in *Dan Caputo Co. v. Russian River County Sanitation Dist.,* 749 F.2d 571, 574 (9th Cir.1984), because

only declaratory and injunctive relief had been requested and the moment had passed when those remedies might have been useful. We think that HBO reads too much into *Caputo.* . . .

Here, Z Channel now seeks damages, and Count One of its complaint, construed favorably to it, alleges restraints that could have resulted in financial damage to Z Channel. We conclude, therefore, that the damages remedy is sufficiently before us to preclude a dismissal for mootness.

*Id.* (citations and footnote omitted); *accord* Fed.R.Civ.P. 54(c) ("[E]very final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in its pleadings."); *Jet Inv., Inc. v. Dep't of the Army,* 84 F.3d 1137, 1143 (9th Cir.1996) (concluding that the district court may entertain a claim for damages based on a general prayer).

 There are critical differences, however, between this case and *Z Channel.* Unlike the plaintiff in *Z Channel,* Seven Words effectively disavowed any claim for damages. *Cf. Z Channel,* 931 F.2d at 1341 n. 4 (noting that the majority did "not read Z Channel's opening brief as disavowing any claim for damages"). Over and over again, throughout the various legal maneuvers, Seven Words consistently represented that it was seeking only declaratory and injunctive relief. For example, not only did Seven Words, in its *Seven Words II* complaint, seek only "a declaration of its rights" and "injunctive relief," but it similarly represented that it was "seeking declaratory relief" in its August 1999 opposition to NSI's motion to dismiss or transfer the case. Similarly, in Seven Words's February 2000 application for a TRO in this case, Seven Words argued that the case would become moot if the domain names were registered to third parties and

pointed to its memorandum in support of its TRO application in *Seven Words I,* where it argued that "[a] damage award against NSI would not be an adequate remedy." Seven Words did not, however, claim that it was seeking damages. Even more recently, in briefing before this court, Seven Words stated that it asserted "one cause of action, for declaratory relief" and, in response to NSI's argument that the case was moot, argued only that "[a] declaratory judgment can be rendered by this Court"-it did not argue that a new claim for damages would keep the case from being rendered moot. The first time Seven Words raised damages in an effort to defeat mootness was in supplemental briefing on appeal. Such a late-in-the-day damages claim is inconsistent with our longstanding rule that we do not consider arguments not raised in the briefs. *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1110 n. 1 (9th Cir.2000) (en banc) (noting that issues not raised in a party's opening brief are waived).

In sum, this case has always been about forcing the registration of the sixteen domain names. But Seven Words never availed itself of the various opportunities it had to prevent registration of those names by third parties. Indeed, it failed to follow the New Hampshire district court's orders, resulting in dismissal of *Seven Words I* and expiration of the Deposit of Domain Name Declaration, and chose not to appeal TRO rulings.

Seven Words only injected the specter of damages into the suit *after* it became clear that the case was moot. Seven Words's belated damages claim on appeal, made after briefing and only days before oral argument, is particularly self-serving in view of the history of the litigation. Although Seven Words sought to amend its complaint to assert a damages claim in *Seven Words I,* the court never reached its request because of the transfer order.

Seven Words did not thereafter seek damages in that case, nor did it do so before the New Hampshire district court. And, despite this earlier flirtation with a damages claim, *Seven Words II* (this case) contained no damages claim, and there was never an effort to amend the complaint to include a damages claim. We will not second-guess Seven Words's tactical decisions and now conjure up a damages claim where none exists. *See Harris v. City of Houston,* 151 F.3d 186, 191 (5th Cir.1998) (concluding that the case was moot where appellants did not assert a damages claim; "[A]s a tactical matter, the appellants limited ... their pleading and arguments solely [to injunctive relief] .... [W]e will not second-guess their original trial strategy, nor conjure up relief independent of the record.").

■ Seven Words argues, however, that its general prayer for relief in its complaint includes an implicit prayer for damages, pointing out that a general prayer for relief "may include appropriate monetary relief should circumstances prohibit injunctive relief." *Jet Inv.,* 84 F.3d at 1143. Under the circumstances of this case, we disagree. The Supreme Court has admonished us to be wary of late-in-the-day damages claims, like that asserted by Seven Words here, cautioning that "a claim for ... damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection." *Arizonans for Official English,* 520 U.S. at 71, 117 S.Ct. 1055 (concluding that plaintiff's plea for nominal damages, made to avoid mootness, could not avoid mootness where a damages claim could not lie against the state defendant).

Our sister circuits have likewise rejected such claims. *See, e.g., Boucher v. Syracuse Univ.,* 164 F.3d 113, 118 (2d Cir.1999) ("[a] request for damages ... will not

avoid mootness if it was inserted after the complaint was filed in an attempt to breathe life into a moribund dispute") (internal quotation marks and citation omitted); *Harris*, 151 F.3d at 190–91 (finding "no support for the appellant's notion that we may fashion relief not requested below in order to keep a suit viable"; "The appellants brought this action to enjoin [conduct], and when [that conduct] occurred, the basic underlying dispute between the parties ended, and the case became moot."); *Thomas R.W. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480–81 (1st Cir.1997) (concluding that damages claim was "too little, too late" and that a general prayer for relief does not avoid mootness where plaintiff did not otherwise request damages and no evidence to support the damages claim); *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 141–42 (2d Cir.1994) (rejecting nominal damages claim not mentioned in the complaint and made in an attempt to avoid mootness where defendants could have asserted qualified immunity had plaintiff's complaint specifically requested monetary relief); *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 602 (7th Cir.1986) (concluding that case was moot where plaintiff "did not seek damages in its complaint or on any other occasion before the district court" and declaratory and injunctive relief were no longer available); *H.K. Porter Co. v. Metro. Dade County*, 650 F.2d 778, 782 (5th Cir.1981) (concluding that the case was moot where injunctive relief was no longer available and the plaintiff did not pray for damages in its original, amended, or proposed supplemental complaints and orally moved to amend its complaint to assert a prayer for damages but "made no formal attempt to allege damages or any other form of relief that would maintain the controversy").

Here, Seven Words's damages claim was made after two years of litigation, after various representations that it was seeking only declaratory and injunctive relief, after a motion to dismiss, and at the eleventh hour, only days before oral argument on appeal. Under these circumstances, we follow the lead of our sister circuits and decline to read a damages claim into Seven Words's complaint. To conclude otherwise would render the pleading requirements of Federal Rule of Civil Procedure 8(a)(3) illusory and certainly prejudice NSI.

Rule 8(a)(3) requires a claim to contain "a demand for judgment for the relief the pleader seeks." Although our decisions go to great lengths to underscore the breadth of notice pleadings, *see, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 679–80, 682–88 (9th Cir.2001), the principle is not without limits. Surely a simple request "for damages" would satisfy the notice requirement without imposing any undue burden on the drafter. Otherwise, notice pleading might allow a plaintiff to file, in any case, a complaint consisting of no more than the useless statement, "I was wronged and am entitled to judgment for everything to which I am entitled." Such a result would undermine the intent of the civil rules and prejudice the opposing party. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975) (concluding that Rule 54(c) permits courts to grant relief to which a party is entitled even if not specifically requested in the complaint *unless* doing so would prejudice the opposing party); *Rental Dev. Corp. v. Lavery*, 304 F.2d 839, 842 (9th Cir.1962) ("If . . . it is made to appear that the failure to ask for particular relief substantially prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings.").

■ The next issue we address is whether there is nevertheless a live controversy for purposes of declaratory relief or whether such relief would be merely advisory. "A case or controversy exists

justifying declaratory relief only when 'the challenged ... activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the ... parties.'" *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir.1989) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)). Here, the dispute with NSI has "evaporated" and there is no remaining potentially adverse effect on the interests of the parties. NSI no longer has a policy prohibiting registration of domain names containing certain words; NSI is no longer the only company that can register the domain names; and the domain names have already been registered to third parties. Seven Words's claim for declaratory relief is therefore moot. Although the constitutional issues are interesting and difficult, we decline to issue an advisory opinion.[6] *See Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (instructing that federal courts must "avoid advisory opinions on abstract propositions of law").

Finally, Seven Words suggests that because NSI released the domain names following dismissal of *Haberstroh* despite the pending appeal in this case, *NSI* is at fault and, therefore, this appeal should not be rendered moot. We have rejected similar arguments in other cases, however, and we do so here as well. For example, in *In re Combined Metals Reduction Co. v. Gemmill*, 557 F.2d 179, 185–87 (9th Cir.1977), a bankruptcy reorganization case involving several appeals, the district court approved and confirmed various sales and leases of property. The trustee sold or leased those properties while the appeals were pending, in accordance with the district court's orders. *Id.* at 187. The appellant, a creditor, argued that the appeals, nevertheless, were not moot because "an appeal cannot be rendered moot by the voluntary act of the appellee." *Id.* at 189. The panel rejected this argument, concluding that certain of the appeals were, indeed, moot:

> The trustee here acted only as the district judge authorized him to act; absent a stay of the court's orders, the trustee cannot be faulted for disposing of the various properties in accordance with those orders. The burden of obtaining stays of the district court's orders was on the appellant, and in view of the well-established rule that an appeal will not affect the validity of a judgment or order during the pendency of the appeal, absent a stay or supersedeas, we have no difficulty in rejecting appellant's ... argument.

*Id.* at 190; *accord Fink v. Cont'l Foundry & Mach. Co.*, 240 F.2d 369, 375 (7th Cir. 1957) (concluding that a suit to enjoin sale of corporate assets was moot even though "it was by the act of [the defendant] that the assets were transferred out of the jurisdiction of the court and the liquidation accomplished," because the defendant "did only that which it had a right to do").

Similarly, here, nothing prohibited NSI from releasing the domain names. The domain names in *Seven Words I* were no longer subject to court control. Pursuant to the Deposit of Domain Names Declaration, the "control and authority regarding the registration and use of the domain

---

**6.** Because the case was not moot when it was before the district court, the district judge addressed the merits of the state constitutional claim. We acknowledge the thorough analysis of the district court, although we take no position on the merits of Seven Words's claim.

names ... revert[ed] [back] to Network Solutions," because the New Hampshire court dismissed the *Seven Words I* litigation. In *Seven Words II,* the district court had dismissed the case on the merits, and Seven Words did not appeal the district court's subsequent denial of its application to enjoin release of the names. Therefore, NSI was under no legal constraint with respect to release of the names. The suggestion of tainted dealing or unclean hands does not wash here.

## CONCLUSION

Now that all of the domain names at issue have been registered to third parties, no declaratory or injunctive relief is available to Seven Words. Although a timely claim for damages could have saved this case from dismissal for mootness, Seven Words earlier eschewed that avenue for tactical reasons and never sought damages until supplemental briefing on appeal and only in a last-ditch effort to avoid dismissal. The general prayer for relief in the complaint is insufficient to create a claim for damages under these circumstances.

NSI's motion with respect to mootness is **GRANTED.** We **VACATE** the district court's judgment in favor of NSI and instruct the district court to **DISMISS** this case as moot.