# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2011

No. 10-30709

Lyle W. Cayce
Clerk

RHONDA DANOS,

Plaintiff - Appellant

v.

EDITH JONES, United States Court of Appeals for the Fifth Circuit, individually and in her official capacity as presiding officer of the Judicial Council of the Fifth Circuit; JUDICIAL COUNCIL OF THE FIFTH CIRCUIT, an entity created by Congress pursuant to 28 United States Code 332 composed entirely of Article III Judges; CAROLYN DINEEN KING, Judge, United States Court of Appeals for the Fifth Circuit, in her official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; JERRY E. SMITH, Judge, United States Court of Appeals for the Fifth Circuit, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; W. EUGENE DAVIS, Judge, United States Court of Appeals for the Fifth Circuit, Council of the Fifth Circuit, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; RHESA H. BARKSDALE, Judge, United States Court of Appeals for the Fifth Circuit, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; EDITH BROWN CLEMENT, Judge, United States Court of Appeals for the Fifth Circuit, in her official capacity as a member of the Judicial Council of the Fifth Circuit and Individually, also known as Joy Clement; PRISCILLA R. OWEN, Judge, United States Court of Appeals for the Fifth Circuit, in her official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; JENNIFER WALKER ELROD, Judge, United States Court of Appeals for the Fifth Circuit, in her official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; LESLIE H. SOUTHWICK, Judge, United States Court of Appeals for the Fifth Circuit, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; SARAH S. VANCE, United States District Judge for the Eastern District of Louisiana, in her official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; NEAL B. BIGGERS, JR., United States District Judge for

No. 10-30709

the Northern District of Mississippi, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; LOUIS G. GUIROLA, JR., United States District Judge for the Southern District of Mississippi, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; SAM R. CUMMINGS, United States District Judge for the Northern District of Texas, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; HAYDEN HEAD, United States District Judge for the Southern District of Texas, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually; FRED BIERY, United States District Judge for the Western District of Texas, in his official capacity as a member of the Judicial Council of the Fifth Circuit and Individually,

Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before HIGGINBOTHAM, COLLOTON,[*] and GRAVES, Circuit Judges.

COLLOTON, Circuit Judge:

Rhonda Danos was a secretary for G. Thomas Porteous, Jr., during his service as a United States District Judge for the Eastern District of Louisiana. Porteous was removed from office on December 8, 2010, after impeachment by the House of Representatives and conviction by the United States Senate. *See* U.S. Const. art. II, § 4; 156 Cong. Rec. S8607, S8611 (daily ed. Dec. 8, 2010); 156 Cong. Rec. H1327, H1335-37 (daily ed. Mar. 11, 2010).

While Porteous still held judicial office, the Judicial Council of the Fifth Circuit publicly reprimanded him for judicial misconduct and ordered that no new cases be assigned to him for two years or until Congress took final action on impeachment proceedings against him, whichever occurred earlier. The Council

---

[*] United States Circuit Judge for the Eighth Circuit, sitting by designation.

No. 10-30709

also suspended Judge Porteous's authority to employ staff for the same period of time. As a result, Danos was terminated from her employment. She then sued the Judicial Council and fifteen of its members, alleging that the Council's action in suspending Judge Porteous's authority to employ staff was unconstitutional and *ultra vires*. The district court dismissed Danos's claims, *Danos v. Jones*, 721 F. Supp. 2d 491 (E.D. La. 2010), and we affirm.

I.

The judicial council of each federal judicial circuit is composed of the chief judge of the circuit, who presides, and an equal number of circuit judges and district judges of the circuit. 28 U.S.C. § 332(a)(1). In the Fifth Circuit, the Judicial Council includes the chief judge, nine circuit judges, and nine district judges. The defendants in this action are the Judicial Council of the Fifth Circuit, the chief judge of the Fifth Circuit, and fourteen other members of the Council as of September 10, 2008. The district court interpreted the complaint to sue the Council members in their official capacities only, *see* 721 F. Supp. 2d at 495, and Danos does not challenge this interpretation on appeal.

One responsibility of the Judicial Council is to consider complaints of judicial misconduct filed in accordance with the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364. In May 2007, the United States Department of Justice filed a complaint alleging that Judge Porteous had engaged in judicial misconduct. The matter was investigated by a special investigatory committee appointed by the chief judge of the Fifth Circuit. After receiving a report from the special committee, the Judicial Council determined that Judge Porteous had engaged in conduct that might be grounds for impeachment under Article II of the Constitution. The Council certified this determination to the Judicial Conference of the United States in accordance with 28 U.S.C. § 354(b)(2)(A).

3

No. 10-30709

The matter was referred to the Committee on Judicial Conduct and Disability of the Judicial Conference, which issued a report and recommendation that was adopted by the Judicial Conference. The Conference then certified and transmitted to the House of Representatives the records of the proceeding and its determination that impeachment of Judge Porteous may be warranted. The Conference also authorized the Committee on Judicial Conduct and Disability to request that the Judicial Council of the Fifth Circuit determine whether to continue or suspend the underlying judicial misconduct proceeding. The Committee further suggested that if the Council continued the proceeding, then it should consider the propriety of a public reprimand and an order that no new cases be assigned to Judge Porteous.

The Judicial Council, after considering the report and recommendation, issued an Order and Public Reprimand in the judicial misconduct proceeding. The Council reprimanded Judge Porteous for conduct prejudicial to the effective and expeditious administration of the business of the courts within the circuit, and ordered that no new cases be assigned to him for two years or until final action on the impeachment proceedings, whichever occurred earlier. *See* 28 U.S.C. § 354(a)(2)(A)(i); Rule for Judicial-Conduct and Judicial-Disability Proceedings 20(b)(1)(D)(i)-(ii). It is undisputed that Judge Porteous had no cases pending on his docket at the time of the Council's order.

In the portion of its order at issue here, the Council, pursuant to 28 U.S.C. § 332(d)(1), also ordered that Judge Porteous's authority to employ staff be suspended for the same period of time in which no new cases would be assigned to him. The order was entered on September 10, 2008. Danos alleges that as a result of the Council's order, she was terminated from her employment on September 19, 2008.

4

No. 10-30709

Danos sued the Judicial Council and fifteen of its members. She sought a declaratory judgment on four points: (1) that the Council lacked authority under 28 U.S.C. § 332(d)(1) to suspend Porteous's authority to employ staff, (2) that the actions available to a Judicial Council with respect to an Article III judge in a judicial misconduct proceeding are limited to those specifically described as "possible actions" in 28 U.S.C. § 354(a)(2)(A)(i)-(iii) and § 354(a)(2)(B)(i)-(ii), (3) that the Council committed an *ultra vires* act by suspending Judge Porteous's authority to employ a secretary and law clerks, and (4) that the Council's order to that effect is null and void. Danos also sought reinstatement to her position as secretary to Judge Porteous, monetary relief including back pay and retirement credits, and attorney's fees and costs.

The district court dismissed the complaint for lack of subject matter jurisdiction, concluding that Danos's claims were barred by sovereign immunity. After entry of the court's order in July 2010, the impeachment proceedings against Judge Porteous were completed, and Porteous was removed from office on December 8, 2010. Danos appeals the district court's order insofar as it dismissed her claims against the members of the Judicial Council.

II.

A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Danos sued both the Judicial Council and members of the Judicial Council, but claims against officers of the United States in their official capacities are actually claims against the sovereign. *S. Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981). Where applicable, therefore, sovereign immunity precludes claims against the officers as well.

5

No. 10-30709

To avoid the bar of sovereign immunity, Danos invokes *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), where the Supreme Court described "suits for specific relief against officers of the sovereign which are not suits against the sovereign." *Id.* at 689. The Court cited two types of cases that may fall into this category: (1) those in which a "statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional," and (2) those in which the officer's action is *ultra vires* his or her authority. *Id.* at 689-90. Danos argues that the Council's action in suspending Judge Porteous's authority to employ staff was both unconstitutional and *ultra vires*, such that sovereign immunity does not preclude her claims. Like the district court, we assume for the sake of analysis that the *Larson* exception to sovereign immunity may still apply in certain cases after the 1976 amendments to the Administrative Procedure Act, *see Swan v. Clinton*, 100 F.3d 973, 981 n.4 (D.C. Cir. 1996); *cf. Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985), but we nonetheless conclude that Danos cannot prevail.

A.

Danos's constitutional argument is that the Council's order "partially disqualified" Judge Porteous from holding his office as an Article III judge. Her theory is that Congress in 28 U.S.C. § 752 authorized federal district judges to "appoint necessary law clerks and secretaries," and that any suspension of that authority amounts to a partial removal from office. Because a federal judge is entitled under the Constitution to hold office "during good Behaviour," U.S. Const. art. III, § 1, Danos contends that the alleged "partial removal" of Judge Porteous could be accomplished only through the impeachment process identified in Article II, Section 4 and set forth in Article I, Sections 2 and 3.

We agree with the district court that Danos lacks standing to pursue this constitutional claim, because she cannot assert the rights of Judge Porteous.

No. 10-30709

Even where Article III standing requirements are satisfied, prudential considerations require that a party "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The alleged rights at issue—to avoid "partial removal" from judicial office and to employ a secretary under § 752—are rights of the judge, not of the secretary. Judge Porteous, it turns out, did not seek review of the Council's order by the Judicial Conference of the United States through the mechanism provided by statute. *See* 28 U.S.C. § 357(a). Yet neither the judicial tenure protections of Article III nor 28 U.S.C. § 752 can properly be understood as granting a secretary a right to judicial relief for alleged violations of a judge's purported rights to retain office or to appoint staff.

Danos complains that Congress foreclosed the judge from securing judicial review of the Council's order by limiting appellate review to a decision by the Judicial Conference. *See* 28 U.S.C. § 357(c). She posits that third-party standing is allowed here, because there exists "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991). This is hardly a case, however, like the Supreme Court's prime example of permissible third-party standing, where requiring the third party to assert his own alleged right "'would result in nullification of the right at the very moment of its assertion.'" *Singleton v. Wulff*, 428 U.S. 106, 116 (1976) (plurality opinion) (quoting *NAACP v. Alabama*, 357 U.S. 449, 459 (1958)). There was no barrier to Judge Porteous challenging the Council's order before the Judicial Conference, and he could have done so without any adverse consequence to his alleged rights. That Congress elected to limit appellate review to the Judicial Conference, and thereby to deprive the federal courts of jurisdiction over a judge's claim, does not grant the courts license to frustrate that limitation by

7

No. 10-30709

"expanding jurisdiction through the back door of third party standing." *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000). We therefore conclude that Danos lacks prudential standing to bring her constitutional challenge to the Council's action.

B.

The *ultra vires* exception to sovereign immunity, as articulated by the Supreme Court in *Larson*, provides that "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." 337 U.S. at 689. Such actions are "ultra vires his authority and therefore may be made the object of specific relief." *Id*. To invoke this exception, a plaintiff must "do more than simply allege that the actions of the officer are illegal or unauthorized." *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976). The complaint must allege facts sufficient to establish that the officer was acting "without any authority whatever," or without any "colorable basis for the exercise of authority." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (internal quotations omitted). Prudential standing considerations do not foreclose this aspect of Danos's claim, because the legal right that she asserted—the right not to be injured by unauthorized action of the Council—was her own. *Haitan Refugee Ctr. v. Gracey*, 809 F.2d 794, 811 nn.13-14 (D.C. Cir. 1987); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1210-11 (11th Cir. 1989).

Danos's complaint sought three forms of relief based on the alleged *ultra vires* action of the Council. First, she prayed for injunctive relief in the form of reinstatement to her position as a secretary to Judge Porteous. This claim is moot in light of Porteous's removal from office. *See Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).

No. 10-30709

Second, the complaint requested an award of back pay and retirement credits. The prayer for relief was based on an annual salary of $67,210.00, and covered a period of more than two years, from the date of Danos's termination through Porteous's eventual removal from office. Even where the *Larson* exception to sovereign immunity applies, however, it does not extend to monetary relief against the United States. "Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Larson*, 337 U.S. at 691 n.11. Based on this "exception to the exception," *Zapata v. Smith*, 437 F.2d 1024, 1025 (5th Cir. 1971), this court has determined that a suit is one against the United States where "the remedy sought is back pay which can be satisfied only out of the public treasury." *Id.* at 1027; *see also Johnson v. Mathews*, 539 F.2d 1111, 1124 (8th Cir. 1976) (holding that footnote 11 in *Larson* "precludes retroactive payments from the federal treasury"). Therefore, Danos's claims for back pay and retirement benefits are barred by sovereign immunity. *Cf.* 28 U.S.C. § 1346(a)(2) (conferring jurisdiction on district courts for back pay claims of $10,000 or less); *Clinton v. Goldsmith*, 526 U.S. 529, 540 (1999).

Finally, Danos seeks a declaratory judgment that the Council's action was *ultra vires*. But given that her claim for monetary relief is barred by sovereign immunity and her claim for injunctive relief is moot, Danos lacks the necessary injury-in-fact to pursue declaratory relief. In an effort to describe a continuing Article III controversy, Danos alluded at oral argument to an alleged injury to her reputation resulting from the Council's order. The order, however, was directed *at Judge Porteous* and suspended *his* authority to employ staff based on

9

the Council's finding that *he* committed misconduct. The remainder of the Council's proceedings were confidential. 28 U.S.C. § 360(a). And even accepting for the sake of analysis that the order and suspension of Judge Porteous's authority caused reputational harm to Danos, any such harm is "merely the secondary effect of an injury that is otherwise moot." *Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003). "[W]here reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III." *Id.* A declaration that Judge Porteous should have been permitted to employ staff while impeachment proceedings were pending would not remedy any alleged injury to Danos.

In any event, there is a second jurisdictional barrier to Danos's claim for declaratory relief, and we may address it as well. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999). Even if Danos has standing to seek declaratory relief, she has not pleaded a sufficient claim of *ultra vires* action by the Judicial Council to overcome the jurisdictional bar of sovereign immunity. The Council suspended Judge Porteous's authority to employ staff based on the Council's authority to "make all necessary and appropriate orders for the effective and expeditious administration of justice." 28 U.S.C. § 332(d)(1). Given this broad grant of administrative power, it is untenable that the Council members, as stewards of the public fisc, lacked even a "colorable basis" for prohibiting a judge with no caseload from employing a secretary paid from the United States Treasury. The statute granting hiring authority to a judge, after all, permits only the appointment of "*necessary* law clerks and secretaries." 28 U.S.C. § 752 (emphasis added). What is more, this court has recognized that "it is not unreasonable to view § 332 as empowering a council to remedy judicial misconduct," and that "§ 332 grants the judicial councils some authority to deal

No. 10-30709

with judicial misconduct." *In re McBryde*, 117 F.3d 208, 227-28 (5th Cir. 1997). The Council thus had at least a colorable basis to believe it also could restrict Judge Porteous's appointment authority as a facet of the remedial action taken in the Order and Public Reprimand of September 10, 2008.

* * *

For these reasons, the judgment of the district court is affirmed.