# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 13, 2012

Lyle W. Cayce
Clerk

No. 10-40912

JESSE COPELAND,

Plaintiff - Appellant

v.

BRAD LIVINGSTON; NATHANIEL QUARTERMAN; BILL PIERCE; AKBAR SHABAZZ; VANCE DRUM; DAVID W. SWEETIN; FRANKIE L. REESCANO; GREGGORY M. OLIVER; SELESTER D. BACON; BLAKE LAMB; ORLANDO C. JOHNSON,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:08-CV-94

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Jesse Copeland, an inmate of the Texas Department of Criminal Justice (TDCJ), refused to leave a Muslim religious meeting in the prison chapel after prison officials ordered the meeting's conclusion. The prison disciplined Copeland for causing a disturbance and placed him on disciplinary restrictions,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40912

including a six-month ban on attending other religious meetings.[1]  Copeland filed a complaint in the District Court for the Eastern District of Texas, challenging this ban and other prison policies affecting Muslim inmates.  The district court disposed of Copeland's complaint through dismissal and summary judgment.  For the following reasons, the district court's judgment is AFFIRMED.

I.

On July 21, 2006, Jesse Copeland attended a Muslim religious meeting in a prison chapel at the Eastham Unit.  At the meeting, Copeland and two other inmates addressed the group.  While the last inmate was speaking, prison officials entered the chapel and instructed all the inmates to pack up and leave.  Copeland refused, and insisted that he be allowed to speak with a higher-ranking prison official.  A disturbance followed, requiring thirty officers to  go to the chapel to escort inmates to their housing areas.  For his role in the disturbance, Copeland received forty-five days of cell restriction and loss of good-time credits, and a ban on attending religious gatherings for six months.

On May 19, 2008, Copeland, *pro se*, filed a complaint in the District Court for the Eastern District of Texas, naming as defendants the TDCJ and several prison officials in their individual and official capacities.  Copeland's initial complaint is difficult to discern, but he later amended his complaint to more clearly allege violations of 42 U.S.C. § 1983, based on the First Amendment's protection of free religious exercise and the Fifth Amendment's prohibition on

---

[1] Copeland's amended complaint states that he was banned from religious meetings for "nearly one year."  Through a *Spears* hearing, it became evident that the ban was, in fact, imposed for six months.  A *Spears* hearing is "an evidentiary hearing in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement."  *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).  The hearing is designed to "bring into focus the factual and legal bases of prisoners' claims."  *Id*.  Facts adduced at a *Spears* hearing become part of the pleadings.  *Id*.  Accordingly, we consider the fact that Copeland was banned from religious meetings for six months a clarification of his less-specific allegation on the length of the ban.

No. 10-40912

double jeopardy. His complaint also alleges violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-cc5.[2] Copeland seeks declaratory relief, injunctive relief, nominal damages, and punitive damages. Copeland's claims are based not only on his discipline stemming from the July 21, 2006, meeting, but also on the prison chaplain's alleged hostility toward Muslim inmates and the presence of Christian symbols in the chapel where Muslim inmates gather for prayer.

The case was referred to a magistrate judge, who conducted a *Spears* hearing on February 19, 2009. Following that hearing, the magistrate judge issued a report recommending dismissal of Copeland's federal claims as frivolous and for failure to state a claim under 28 U.S.C. § 1915A. The district court adopted the report in its entirety on August 7, 2009, and entered judgment that day.

Copeland later successfully moved for relief from that judgment, but only as to his allegation that the chapel provided for Muslim inmates contained Christian symbols. The magistrate judge ordered defendants Vance Drum, Bill Pierce, and Akbar Shabazz to answer Copeland's complaint as to that allegation.[3] After answering the complaint, these defendants moved for summary judgment, arguing that Copeland had failed to exhaust his administrative remedies. The magistrate judge recommended granting summary judgment. The district court again adopted the magistrate judge's

---

[2] Copeland's amended complaint contains several other federal and state law claims, but he does not include arguments concerning these claims in the body of his brief. Accordingly, we do not consider them on appeal. *See Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) ("Although we liberally construe *pro se* briefs, such litigants must still brief contentions in order to preserve them.").

[3] According to Copeland's amended complaint, Vance Drum is the Christian Chaplain at the Eastham Unit, Bill Pierce is the Director of Chaplaincy for the TDCJ, and Akbar Shabazz is the Islamic Chaplain at the Eastham Unit.

No. 10-40912

report, granted summary judgment, and entered a final judgment on August 24, 2010.  Copeland, *pro se*, appeals.

II.

We review the district court's dismissal under 28 U.S.C. § 1915A de novo, accepting the facts alleged in the complaint as true and viewing them in the light most favorable to Copeland.  *Green v. Atkinson*, 623 F.3d 278, 280 (5th Cir. 2010).  We also review the district court's grant of summary judgment de novo.  *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).

A.

Copeland alleges a First Amendment free exercise violation under § 1983 and a violation of his rights under RLUIPA, based on his six-month ban from attending religious meetings.  The First Amendment, as applied to the states by the Fourteenth Amendment, prohibits laws "respecting an establishment of religion, or prohibiting the free exercise thereof."   U.S. Const. amend. I. Similarly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person . . . confined to an institution."  42 U.S.C. § 2000cc-1(a).

The district court dismissed these claims because it held that they were frivolous.  That holding may be in error if we view the substance of the claims, but, as we explain below, there are procedural bars to Copeland's recovery: sovereign immunity, qualified immunity, and mootness.  Although these issues, which were raised in an answer filed after most of Copeland's claims had been dismissed, were not considered by the district court, we will consider them here because they either implicate our jurisdiction or involve purely legal issues.

1.

 The appellees first argue that Copeland cannot recover money damages from either the TDCJ or the other defendants in their official capacities because that recovery is barred by sovereign immunity.  We agree.

4

No. 10-40912

Texas and its state employees in their official capacities enjoy sovereign immunity from RLUIPA damages actions. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, 131 S.Ct. 1651 (2011). Also, "[s]ection 1983 does not provide a cause of action against states or state employees in their official capacities for damages." *Id.* at 335 n.74 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989)).

2.

The appellees next argue that Copeland cannot recover money damages from any of the defendants in their individual capacities under RLUIPA because RLUIPA does not create a private right of action against individuals for damages. The appellees are correct. *Id.* at 329. Therefore, Copeland's RLUIPA damages action against individual defendants warrants dismissal.

3.

Furthermore, the individual defendants claim qualified immunity from Copeland's First Amendment claim under § 1983. "Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). Immunity should be granted unless existing legal precedent has "placed the statutory or constitutional question beyond debate." *Id.* at 2083.

Even if, on appellate review, we concluded that the six-month ban violated Copeland's First Amendment rights, the defendants would be entitled to qualified immunity because the unconstitutionality of the ban was not clear at the time it was imposed. Prison officials have broad discretion in balancing prisoner rights with prison security. *See generally Turner v. Safley*, 482 U.S. 78, 84-85 (1987). We have held that some restrictions on religious meetings in prison—even restrictions that are indefinite and imposed on inmates who have

No. 10-40912

not abused religious meeting times—do not offend the First Amendment.  *See Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007); *Adkins v. Kaspar*, 393 F.3d 559, 565 (5th Cir. 2004).  Copeland's right to attend religious meetings, despite his misconduct at such a meeting, was therefore unclear, and the individual defendants are entitled to qualified immunity.

4.

The appellees also argue that Copeland's pursuit of injunctive and declaratory relief is moot.  It is "beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined."  *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).  On appeal, Copeland argues that his disciplinary restrictions, not the prison's disciplinary policy, offended the First Amendment and RLUIPA.  Because Copeland is no longer under disciplinary restrictions, we are left with nothing to enjoin, and his request for an injunction is moot.  Because Copeland's request for an injunction is moot and because, as discussed above, his pursuit of damages is barred by immunity doctrines, he lacks the necessary injury-in-fact to pursue declaratory relief.  *See Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011).  A declaration that Copeland should not have been punished in this way would not remedy any alleged injury.  *See id.*  Therefore, we hold that Copeland's requests for injunctive and declaratory relief are moot, and we lack jurisdiction to consider them.

B.

Copeland bases his Fifth Amendment double jeopardy claim on his six-month ban from religious meetings.  He argues that the ban was imposed informally and in addition to a formal punishment: forty-five days of cell restriction and loss of good-time credits.  Copeland contends that he was

6

No. 10-40912

therefore unconstitutionally punished twice for the same offense. We disagree.[4] Prison discipline falls outside the scope of double jeopardy. *See United States v. Galan*, 82 F.3d 639, 640 (5th Cir. 1996). We hold the district court did not err in dismissing Copeland's Fifth Amendment double jeopardy claim.

C.

In addition to his claims stemming from the 2006 disturbance at the prison chapel and his subsequent discipline, Copeland alleges a First Amendment violation under § 1983 and a RLUIPA violation based on policies at the Eastham Unit experienced by all Muslim inmates.

1.

Copeland alleges that Chaplain Vance Drum has created a hostile environment for Muslim inmates by requiring staff support inmates to attend Muslim religious meetings and to set up recording equipment to monitor those meetings. Drum has allegedly stated that the officials attend those meetings to ensure that "blackism" is not practiced at the Eastham Unit.

The practice of monitoring prison religious gatherings is neither a First Amendment nor RLUIPA violation. *See DeMoss v. Crain*, 636 F.3d 145, 155-56 (5th Cir. 2011). Monitoring alone does not prevent the free exercise of religion in a manner that is actionable. Nor do ill-chosen remarks. We hold that Copeland fails to state a claim here, no matter how generously we construe the facts alleged.[5]

---

[4] Our foregoing discussion of sovereign immunity and mootness applies with equal force here. We address the substantive defect in Copeland's Fifth Amendment claim because the discussion is necessary to address the liability of individual defendants.

[5] Our sovereign immunity discussion applies here also. We discuss the substantive defect in this particular claim because the discussion is necessary to address the liability of individual defendants and to address claims for injunctive and declaratory relief regarding this prison policy, which we presume is ongoing.

No. 10-40912

2.

Copeland also argues that the chapel where Muslim inmates are permitted to meet and pray contains various Christian symbols. The district court granted summary judgment to the appellees on this claim because Copeland failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The prison's administrative procedures, not federal law, provide the level of factual detail that a prisoner must allege in a grievance in order to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Grievances should further the goal of the exhaustion requirement, that is to give prison officials the "opportunity to resolve disputes . . . before being haled into court." *Id.* at 204. We have previously summarized the sort of detail TDCJ requires prisoners to allege in furtherance of that goal:

> Among other things, the rules direct inmates to write 'briefly and clearly' but also to 'be very specific about your grievance or your problem.' They state that a grievance should contain facts, not legal words or conclusions. They further direct the prisoner to '[t]ell us what action you want us to take to resolve your grievance or problem' . . . .

*Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

With respect to the conditions of the chapel, the only statement Copeland made in his initial administrative grievance is that the chapel "does not accommodate the 'minimal' requirements to permit a lawful mode of prayer for Muslims." This statement is neither specific nor clear about the alleged problem: the presence of Christian symbols. Also, Copeland's grievance does not contain a request for TDCJ to modify the chapel in any way or to provide an alternative place for Muslim inmates to pray. We hold that Copeland's

No. 10-40912

grievance did not comply with TDCJ's administrative procedures, and therefore did not permit the exhaustion of administrative remedies. His vague statement about "minimal requirements" for prayer did not give prison officials the opportunity to resolve the dispute concerning the chapel administratively. Because Copeland failed to exhaust his administrative remedies, he was not entitled to bring an action based on the Christian symbols in the chapel, and summary judgment was appropriate.

## III.

In review, Jesse Copeland contends that his six-month ban from prison religious gatherings violated his First Amendment and RLUIPA rights. These claims are either asserted against immune defendants or are moot. He also contends that the six-month ban constituted unconstitutional double punishment. We find no merit in that argument.

Additionally, Copeland complains that certain general conditions at the Eastham Unit violate his First Amendment and RLUIPA rights. We hold that, in challenging the monitoring of prison inmates, he states no claim for a First Amendment or RLUIPA violation. As to Copeland's challenge concerning Christian symbols in the prison chapel, we hold that he failed to exhaust his administrative remedies. The district court's judgment is therefore

AFFIRMED.

9